Pearson, C. J.
 

 There is no such want of equity on the face of tbe bill as to support tlie motion to dismiss.
 

 1. The. ground taken by the defendant’s counsel, that a •-Uourt of Equity has no jurisdiction to compel the specific performance of-.a contract to deliver rosin or other articles of a like nature, having no intrinsic value, because the party has <a .plain and..adequate remedy at law, is stated too ¿broadly. -Courts.of-equity have jurisdiction to compel the
 
 *53
 
 specific performance of all!' contracts ; in other words — to make the, party do the very thing he. has -agreed to do. This is
 
 equity:
 
 It is-true that-the- court'will not,,.except under peculiar circumstances, entertain a bill' to enforce the specific performance of a contract- like the one before ns. This is'- not: for- the want of jurisdiction, hut because it is not worth while ! For the party may, with the money, go into market and buy an article of the same kind that will suit Mm as well.
 

 Adams, on Equity, assumes that the court has general jurisdiction on the subject-, hut lays it down that, to induce the eourt to-entertain a hill for specific performance — 1st. There must he a valuable consideration. 2d.. A specific performance must- he -practicable: 3d. t uch a performance must he necessary for the purposes of justice ; for if the party can maintain an action at law-, and' recover- damages, and with the money buy an article of the same kind, there is-no occasion for-the-interference of a court of equity.
 

 In our case there was no occasion for the interference of a court of equity on account of the intrinsic value of the rosin, hut there was a- necessity for it on another, ground. At the time* this injunction issued, (November, 1865,) although the offices of the courts of law existed, there were, by the result of the-wan; no Judges to fill them-. The offices were vacant. So- there was no court in which the complainant could institute an action of assumpsit, for the recovery of damages- far breach of the contract. The Judges of the courts of oyer and. terminer had no powers except those conferred by the President through the-Provisional Governor. These did not embrace civil suits,.and those conferred by the Conventions. The ordinance entitled,
 
 “
 
 An ordinance to protect the owners of property and for other purposes,” ratified 18th October, 1865, invests tlie persons,, appointed by the Provisional Governor Judges of the Courts
 
 *54
 
 <of Oyer ami Terminer, with power do exercise at their 'chambers all <such powers and authority as by the laws of the State are 'conferred on the Judges of the Superior Courts of law and equity at chambers, e. g. to issue writs of injunction, sequestration, &c. It is further ordained, that so •soon as the Superior Courts are restored, the Judges of the ■Courts uf Oyer and Terminer shall transfer the oases before them into the courts of equity, and the latter courts shall proceed as if the cases had been instituted there. Here is ¡a declaration by the Convention that the ordinary courts of the State were not in the exercise of their powers, and that, but for the ordinance, the complainants would have had no remedy whatever when the defendant refused to deliver the rosin ; so the interference of the Judge of Oyer and Terminer was necessary.
 

 It was much discussed at the bar whe'ker this contract was
 
 executed,
 
 in respect to the rosin, so as to vest the legal title in the complainants ; or only
 
 executory,
 
 leaving the title in the defendants. We deem it unnecessary to express an opinion on that question, for it is certain that so much of the agreement, as obliged the defendant to deliver the rosin to the order of the complainants, was executory, and in respect to tlmt part of the agreement, the complainants are clearly entitled to a specific performance, and this is the primary equity which the bill seeks to set up.
 

 2. It was insisted that as in the first instance the bill was entertained because there was,
 
 at that time,
 
 no court of law in condition to give a remedy ; therefore, inasmuch as this reason bad ceased by the restoration of the courts at the time that the motion was made to dismiss, the cause should not have been retained — under the maxim,
 
 cessante ratione, $0.
 

 As the court had jurisdiction over the subject, and it was necessary for it to entertain the case in the first instance,
 
 *55
 
 'there is no principle by which the fact, that the courts of law were afterwards restored, could oust the jurisdiction. Having possession of the case, it was proper to retain it, ■and give relief. This is in analogy to the rule that where <a court of equity has jurisdiction, it will not decline its exercise, although a statute he passed conferring a like jurisdiction on the courts of law, unless the statute contain words of exclusion, which oust the jurisdiction of the courts ■of equity. The subject of relief against penalties furnishes •a familiar instance of the application of this rule.
 

 3. It was insisted that the equity for a specific performance was lost by laches and unreasonable delay, and that this was a good ground in support of the motion to dismiss ; or that, at all events, it supported the motion to dissolve the injunction on the coming in of the answer, by which it appeared that, in 1863, the defendant had offered the rosin to the complainants and they refused to come and take it away, or to take back the purchase money which the defendant tendered, with interest. This conduct, as the defendant insists, amounted in effect to a rescission of the contract, and certainly makes it unreasonable afterwards to ask for its specific performance.
 

 We cannot perceive the force of this reasoning. In 1862, the defendant sold the rosin to the complainants, and received the purchase money, and as a part of the bargain ■ agreed, that the rosin should remain under his shelter for six months, free of storage ; if longer, a reasonable rate of storage was to be allowed — any additional cooperage that should become necessary to be paid by the complainants, and the rosin was to remain there at the risk of the complainants in respect of fire or otherwise. So, it was in fhe contemplation of the parties that the rosin would remain at the place where it was for some considerable time ; how long is not expressed, but, say, a reasonable time. We do not consider that it was at all unreasonable, under the cir
 
 *56
 
 cumstances,-.that it should, be left there until .some time in the summer of-1865, after-the war was. over, and things had somewhat cleared up, so that it could conveniently be removed. . Taking into consideration the facts, that the purchase money was paid, that the defendant was to be allowed storage, that the rosin was at the risk of the complainants by fire or otherwise, (which includes'' the ravages of war,) and that war was going on at the date of the contract, that the complainants conld not, until its close,.remove the rosin to a seaport without heavy expense, or ship-it, owing to the blockade — the silence of the agreement as to the time raises an almost necessary implication that the rosin was to remain there until the end of the war. In
 
 Falls
 
 v.
 
 Carpenter,
 
 1 D. and B. Eq., 231,. specific performance is decreed, although the purchaser had failed for more than six years to comply with the contract, had become insolvent, and never would have been able to pay the price but for the discovery of a gold mine upon the land. In equity, time is not of the essence of the contract, unless made so by- its terms.
 

 4. It was insisted that the injunction should be dissolved, because there is no reasonable ground to apprehend loss on the part of the complainants, as the defendant is- solvent, and fully responsible for such damages as the- complainants can recover at law. The bill avers that the defendant has threatened to sell the rosin, and send it beyond* the limits of the State.. The am-swer admits that tbe defendant, considering the rosin as his own properly, has tbe purpose to sell it,.or otherwise dispose of it as may seem most to his interest, hut he denies that he intends to defraud' the complainants of it or its value-. In other-words,-he thinks that although he has sold the rosin-on.ce, and received the price, he can,, with a good conscience, sell it again,, and' let the first purchaser recover damages: at law-, if he can. This does not accord wi-'th the principles established in courts of equity. The maxim is:. Every one is-obliged in conscience-
 
 *57
 
 to do the very thing which for a valuable- consideration be-has promised to do ; and the court will restrain the party from doing any act which will hinder-or-dtelay a compliance-with its decree to that effect j. see
 
 Parker
 
 v.
 
 Grammer, ante
 
 p. 28.
 

 Per Curiam.
 

 Decretal order affirmed!.